## State of Vermont v. John F. Foley

[443 A.2d 452]

No. 148-81

Present: Barney, C.J., Billings, Hill, Underwood and Peck, JJ.

Opinion Filed February 2, 1982

644

*Robert V. Simpson, Jr.,* Chittenden County Deputy State's Attorney, Burlington, for Plaintiff.

*Jeffrey Brian Meller,* Burlington, for Defendant.

**Hill, J.** The defendant John Foley was charged with two counts of obtaining money by false pretenses in violation of 13 V.S.A. § 2002. The gist of the charges was that the defendant had twice issued bad checks. The defendant moved to dismiss on the ground that the bad check statute, 13 V.S.A. § 2022, had impliedly repealed the false pretenses statute for cases involving a theft by check. The Chittenden District Court denied the motion, and certified the following question for an interlocutory appeal under V.R.A.P. 5(b): "Did the Vermont Legislature repeal by implication the false token statute, 13 V.S.A. § 2002, when it enacted the bad check statute, 13 V.S.A. § 2022, where the vehicle of the fraud is a check?"

We answer the certified question in the negative.

There are two tests for determining if a subsequent enactment impliedly repeals a statute. Repeal is implied if the statutes " 'are so far repugnant that they cannot stand to-

gether,' " or " 'the later act covers the whole subject of the former and plainly shows that it was intended as a substitute therefor.' " *State v. Watson,* 138 Vt. 276, 279, 413 A.2d 806, 807 (1980) (quoting *Troy Conference Academy* v. *Town of Poultney,* 115 Vt. 480, 485, 66 A.2d 2, 5 (1949)). There is a presumption against implied repeal, which is grounded in judicial respect for the ultimate authority of the legislature over lawmaking. See 1A C. Sands, Statutes and Statutory Construction § 23.10 (1972) (rev. 4th ed. of Sutherland's Statutory Construction). This presumption can be overcome, however, if either part of the test outlined in *State* v. *Watson, supra,* is satisfied. The appellant argues for repeal, asserting that the bad check act is both repugnant to the false pretenses act, and, as applied to thefts by check, incorporates the false pretenses act. Since the latter enactment controls in any conflict, see *Town of Bennington* v. *Vail,* 117 Vt. 395, 399, 92 A.2d 467, 469 (1952), he argues that the false pretenses charges must be dismissed, as the alleged misconduct should have been prosecuted under the bad check act.

■ *State* v. *Watson, supra,* requires a comparison of the two statutes. There are three elements to the false pretenses offense.[1] First, the defendant must act with the intent to defraud. Second, he or she must use a fraudulent device or artifice, such as a bad check. See 13 V.S.A. § 2003. Third, the offender must actually obtain money or property with a value in excess of $25.00. See *State* v. *Zeisner,* 133 Vt. 375, 376–77, 340 A.2d 69, 70 (1975). The offense carries a penalty of ten years imprisonment or a $1,000.00 fine.

■ The bad check offense,[2] derived from the Model Penal Code, has two elements. See American Law Institute, *Model*

[1] 13 V.S.A. § 2002 provides:

A person who designedly by false pretenses or by privy or false token and with intent to defraud, obtains from another person money or other property, or a release or discharge of a debt or obligation, or the signature of a person to a written instrument, the false making whereof would be punishable as forgery, shall be imprisoned not more than ten years or fined not more than $1,000.00 if the money or property so obtained exceeds $25.00 in value.

[2] 13 V.S.A. § 2022 provides:

A person who issues or passes a check or similar sight order for the payment of money, knowing that it will not be honored by the

*Penal Code and Commentaries,* Part II, §§ 220.1 to 230.5, at § 224.5 (1980) (Official Draft and Revised Comments) (hereinafter Model Penal Code). First, the offender must issue or pass a check. Second, at the same time he or she must have knowledge that the check will not be paid. Knowledge may be presumed if the offender drew the check on a fictitious account, or failed to provide sufficient funds to pay the check within ten days of notice of dishonor. The offense is punishable by a year in prison, a $1,000.00 fine, or both. See 13 V.S.A. § 2022.

■ Careful scrutiny reveals that the elements of the respective offenses differ under the two statutes. Conviction for false pretenses requires proof of intent to defraud, while mere knowledge suffices for the bad check crime. One must actually obtain property to be convicted for false pretenses, which is not a requirement under the bad check statute. In addition, there are permissive presumptions for finding criminal intent under the bad check statute which are unavailable under the false pretenses act.

■ These distinctions dissolve any surface illusions of similarity between the two statutes, and reveal two different crimes. A defendant could, for example, pass a check, knowing it would be dishonored, but fully intending to make good on the underlying obligation. He would have a defense to the false pretenses prosecution, but be guilty of the bad check crime. Alternatively, a check may be good when issued, but a defendant could subsequently decide to defraud the payee, and stop payment. Prosecution would then lie for false pretenses, not the bad check crime. The property requirements of the false pretenses statute (a defendant must actually obtain property valued at $25.00 or more) precludes conviction for

---

drawee, shall be imprisoned for not more than one year or fined not more than $1,000.00 or both. For the purposes of this section, an issuer is presumed to know that the check or order, other than a post-dated check or order, would not be paid, if:

(1) the issuer had no account with the drawee at the time the check or order was issued; or

(2) payment was refused by the drawee for lack of funds, upon presentation within thirty days after issue, and the issuer failed to make good within ten days after receiving notice of that refusal.

issuing bad checks as gifts. Yet, the same act is culpable under the bad check act. See Model Penal Code, *supra*, § 224.5, at 316.

■ These differences all militate against implied repeal and are supported by additional factors. Two years after enacting the bad check statute, the legislature repealed a portion of the false pretenses crime that provided lesser penalties for thefts involving less than $25.00. See 13 V.S.A. § 2004, *repealed*, 1974 Vt. Acts No. 249 (Adj. Sess.), § 111. Apparently, the legislature was well aware of the law, and chose to leave the remainder of the false pretenses act intact, coexisting with the bad check act. Such deliberate legislative surgery precludes a judicial excision of the false pretenses act. See 1A C. Sands, *supra*, § 23.11. In addition, numerous other jurisdictions, relying upon the different elements of the respective crimes, have rejected arguments for implied repeal of false pretenses crimes by bad check acts. See, e.g., *State* v. *Culver*, 103 Ariz. 505, 507, 446 P.2d 234, 236 (1968) (false pretenses crime broader); *State* v. *Roderick*, 85 Idaho 80, 84, 375 P.2d 1005, 1007 (1962) (false pretenses crime requires actual obtainment of money); *State* v. *Covington*, 59 N.J. 536, 537–38, 284 A.2d 532, 533 (1971) (false pretenses crime requires specific intent and actual obtainment of money); *Barker* v. *State*, 599 P.2d 1349, 1351 (Wyo. 1979) (false pretenses crime requires actual obtainment of money). Courts have endorsed implied repeal only when the bad check statute was drafted to completely incorporate the false pretenses statute. See *State* v. *Richman*, 347 Mo. 595, 599–600, 148 S.W.2d 796, 798 (1941) (both statutes require same intent and actual obtainment of money); *Haley* v. *State*, 156 Tenn. 85, 88–90, 299 S.W. 799, 800 (1927) (both statutes require fraudulent intent and actual obtainment of money; subsequent enactment has repealer clause).

■ While there is significant overlap between Vermont's false pretenses and bad check statutes, that alone is insufficient to effect an implied repeal. See *Rosenberg* v. *United States*, 346 U.S. 273, 294–95 (1953) (Clark, J., concurring). There are too many differences between the bad check and false pretenses statutes to hold them repugnant, or to conclude that the bad check act is a substitute for the false

pretenses act. Furthermore, the legislature has deliberately left both statutes intact. Thus, the standard for implied repeal propounded in *State* v. *Watson, supra,* has not been satisfied.

*The certified question is answered in the negative.*